**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS**

**KRISTEN GALBAN,** individually and on
behalf of all others similarly situated,

                                              **Case Number: 1:22-cv-4917**

                 **Plaintiff,**

**v.**                                               **JURY TRIAL DEMANDED**

**INSTITUTE FOR THE INTERNATIONAL
EDUCATION OF STUDENTS,** an Illinois
not-for-profit corporation,

                 **Defendant.**

## CLASS ACTION COMPLAINT

Plaintiff, Kristen Galban, individually and on behalf of other similarly situated individuals, brings this Class Action Complaint against the Institute for the International Education of Students d/b/a IES Abroad ("IES Abroad" or "Defendant"), and alleges as follows, based upon her own personal knowledge, and upon information and belief, including investigation conducted by her attorneys:

### I.      INTRODUCTION

1.     Defendant is a not-for-profit academic consortium with over 260 U.S. member universities that provides study abroad and internship programs at over 81 locations around the world.

2.     Plaintiff brings this breach of implied contract and unjust enrichment class action because Defendant promised courses to be provided in person and outside of the United States in exchange for tuition payment, however, for the final 8 ½ weeks of the Spring 2020 Semester, Defendant provided online courses for students to conduct from their homes in the United States, not abroad. Put another away, Defendant did not provide any in person courses that occurred in a

country outside of the United States at all for the final 8 ½ weeks of the Spring 2020 semester. The whole point of a study abroad program is for it to occur abroad. The abroad experience cannot be replicated online.

3.     Additionally, Defendant canceled the following services for the final 8 ½ weeks of Plaintiff's 17-week Spring 2020 study abroad program and kept students' monies paid for (1) housing, (2) mandatory field trips, (3) elective field trips, (4) student events, (5) public transportation tickets, and (6) mandatory health insurance (collectively the "Services") for the 8 ½ weeks that Defendant cancelled.

4.      Defendant literally does business under the name of IES Abroad, to highlight the nature of their business, which is to provided courses for students to be conducted outside of the United States. Plaintiff paid a premium price for a study abroad program in Vienna and was provided an online-course conducted from her home for the final 8 ½ weeks of the Spring 2020 semester. Plaintiff would not have signed up for an expensive online course and would not have signed up for the study abroad program had she known it would be an online class for 8 ½ weeks that she would do from her home, not Vienna.

5.     Defendant simply kept monies paid by the students (who paid for the entire Spring 2020 program upfront) for in person courses provided abroad and the Services and kept any refunds it received from third party vendors for the cancellation of the final 8 ½ weeks of the Spring 2020 program.

6.     Any refunds Defendant provided to Plaintiff and Class Members from third-party vendors was not an accurate pro-rata calculation of the 8 ½ weeks cancelled. For example, Plaintiff received a refund for the mandatory insurance cancellation. However, the amount Plaintiff received was not reflective of the actual cancellation date of the policy that reflects the 8 ½ weeks

that were cancelled. Instead, Defendant kept a profit by only refunding from March 21, 2020 onwards, when in reality, Defendant shut down study abroad in or around March 11, 2020.

7. The decision to cancel and keep the monies paid deprive Plaintiff and Class Members from recognizing the benefits of their housing, mandatory and elective field trips, student activities, and health insurance refunds.

8. Thus, Plaintiff and the Class seek a return of their monies paid for tuition and Services for the final 8 ½ weeks of the Spring 2020 program where courses were not conducted abroad in person and the Services were not provided by Defendant at all and any refund provided was not the correct pro-rata amount.

## II. VENUE AND JURISDICTION

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because there are at least 100 Class members in the proposed Class, the combined claims of proposed Class members exceed $5,000,000, exclusive of interest and costs, and at least one Class member is a citizen of a state other than Defendant's state of citizenship. This Court also has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. §1367.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because Defendant resides in this District and most of the events or omissions giving rise to Plaintiff's claims occurred in this District and Defendant is subject to personal jurisdiction in this District.

## III. PARTIES

11. Plaintiff Kristen Galban is a natural person and citizen of Virginia.

12. Defendant Institute for the International Education of Students is an Illinois not-for-profit corporation headquartered in Chicago, Illinois and a citizen of Illinois.

## IV.    FACTUAL ALLEGATIONS

**A.    Defendant's Spring 2020 Program Marketing**

13.    Defendant is private sector international study abroad program that partners with U.S. universities to provide study abroad programs in over 81 locations around the world.

14.    Like other private study abroad companies, Defendant does not merely sell credit hours in exchange for money, as one would sell some common consumer commodity. Rather, Defendant sells an educational experience based on specific services, including courses occurring in a foreign country, housing in a foreign country, mandatory field trips, elective field trips, and student events to complete a rich tapestry of co-curricular experiences.

15.    Thus, Defendant focuses its marketing and recruiting efforts on the experiences it offers students for the entire semester abroad. For example, its Spring 2020 program marketing materials include the following implied promises and representations:

> Study abroad is more than going from here to there. It's an exhilarating challenge of academic and cultural immersion, plus a whole lot of fun. At IES Abroad we're committed to offering you incredible international experiences that set you up for success before, during, and after studying abroad. Learn more about how we do study abroad, differently.
> College study abroad is your chance to live and study in another country while earning college credit. Whether you choose to spend a semester, summer, or year studying abroad, your IES Abroad courses and experiential learning opportunities—think internships, service learning placements, field trips, and more—are designed to immerse you into the local culture. Because while studying abroad, the world is your classroom.
> Our study abroad programs allow you to choose courses based on your area of study and where you want to travel. Other details, like your housing, field trips, and on-site support are all built into the program. Learn more about what's included in our study abroad programs.[1]

16.    Defendant's Spring 2020 Statemen of Ethical Principles provided implied promises and were marketed as Defendant's programs being a student first approach:

---

[1] https://web.archive.org/web/20200408180012/https://www.iesabroad.org/study-abroad

IES Abroad is committed to placing the interests of our students first, to the delivery of superior academic programs and to providing excellent service to our students and educational partners around the world. These are our highest priorities. IES Abroad believes transparency, best practices and maintaining the integrity of our business principles are in the best interests of our students, our global academic partners and our organization. The governance structure of IES Abroad features a system of oversight characterized by consortium member and third party driven checks and balances.
. . .

IES Abroad is committed to making study abroad affordable. IES Abroad tuition prices are the same for every college and university partner and have always been publicized. They can be viewed on our website and in our "Program Fees and Estimated Costs Book" which is disseminated regularly to colleges and universities. IES Abroad does not offer colleges or universities special pricing or discounts based upon enrollment in its term programs.
. . .

IES Abroad stands behind the integrity of its business and financial practices. If ever there is even the slightest hint of impropriety, IES Abroad pledges to take swift, appropriate action to address it. For this reason, IES Abroad has created the Whistleblower Protection Policy, which establishes a procedure for IES Abroad employees, students, member schools and vendors to report illegal or dishonest activity or other misconduct involving IES Abroad financial or business affairs.

Certain IES Abroad policies with respect to admission, academic policy, and ethical business and financial practices are published and made available to the public by IES Abroad.

IES Abroad is committed to adherence to applicable law and respect for the culture and practices of the countries where it operates.[2]

17.     To further show its student first approach, and that courses would occur in person abroad, Defendant provided implied promises and marketed that students for each foreign location in the Spring 2020 programs would be charged the same tuition, housing, and mandatory health insurance fees:

---

[2] https://web.archive.org/web/20200924050046/https://www.iesabroad.org/study-abroad/about/ethical-principles

## IES Abroad Program Fees



Prices are in effect for Spring 2020

| Program | Tuition | Housing/ Meals | Health Insurance | Total IES Abroad Program Fee |
|---|---|---|---|---|
| Amsterdam – Business & Economics | $15,660 | $5,060 | $230 | $20,950 |
| Amsterdam – Law & Criminology | $15,660 | $5,060 | $230 | $20,950 |
| Amsterdam – Psychology & Sciences | $15,660 | $5,060 | $230 | $20,950 |
| Amsterdam – Social Sciences & Humanities | $15,660 | $5,060 | $230 | $20,950 |
| Amsterdam Direct Enrollment – Conservatorium van Amsterdam | $20,865 | $5,375 | $230 | $26,470 |
| Auckland Direct Enrollment – University of Auckland | $15,435 | $4,475 | $490 | $20,400 |
| Barcelona – Arts & Culture | $15,435 | $2,825 | $230 | $18,490 |
| Barcelona – Journalism & Communications | $15,435 | $2,825 | $230 | $18,490 |
| Barcelona – Liberal Arts & Business | $15,435 | $2,825 | $230 | $18,490 |
| Barcelona – Political Science & International Relations | $15,435 | $2,825 | $230 | $18,490 |
| Barcelona – Full-Time Semester Internship | $4,695 | $2,825 | $230 | $7,750 |
| Berlin – Language & Area Studies | $15,200 | $2,920 | $230 | $18,350 |
| Berlin – Metropolitan & Urban Studies | $15,200 | $2,920 | $230 | $18,350 |
| Berlin – Security Studies & International Affairs [15-wk] | $15,200 | $2,920 | $230 | $18,350 |
| Buenos Aires  – Advanced Spanish Immersion | $13,345 | $3,155 | $230 | $16,730 |
| Buenos Aires  – Latin American Societies & Cultures | $13,345 | $3,155 | $230 | $16,730 |
| Cape Town – Health, Culture & Development | $14,865 | $4,220 | $395 | $19,480 |
| Cape Town – University of Cape Town | $14,865 | $4,220 | $395 | $19,480 |
| Christchurch Direct Enrollment – University of Canterbury | $15,140 | $4,270 | $490 | $19,900 |

| Program | Tuition | Housing/ Meals | Health Insurance | Total IES Abroad Program Fee |
|---|---|---|---|---|
| Dublin – Business, Entrepreneurship & Technology | $13,140 | $4,280 | $230 | $17,650 |
| Dublin – Irish Studies | $13,140 | $4,280 | $230 | $17,650 |
| Dublin – Writers Program | $13,140 | $4,280 | $230 | $17,650 |
| Dublin Direct Enrollment – Dublin City University | $12,530 | $4,940 | $230 | $17,700 |
| Dublin Direct Enrollment – National Theatre School of Ireland – Gaiety School of Acting | $14,480 | $4,280 | $230 | $18,990 |
| Dublin -Direct Enrollment - Trinity College Dublin | $19,530 | $7,230 | $230 | $26,990 |
| Dublin Direct Enrollment - University College Dublin | $17,330 | $4,240 | $230 | $21,800 |
| Dublin - Full-Time Semester Internship | $4,245 | $4,280 | $230 | $8,755 |
| European Union - European Union | $16,010 | $3,810 | $230 | $20,050 |
| Freiburg - Environmental Studies & Sustainability | $15,950 | $3,810 | $230 | $19,990 |
| Freiburg - Language & Area Studies | $15,330 | $3,810 | $230 | $19,370 |
| Galápagos Direct Enrollment - Galápagos Academic Institute for the Arts & Sciences (GAIAS) | $16,420 | $4,210 | $230 | $20,860 |
| Granada - Study in Granada | $11,535 | $3,230 | $230 | $14,995 |
| London - Health Practice & Policy | $17,150 | $5,040 | $230 | $22,420 |
| London - Study London | $14,840 | $4,300 | $230 | $19,370 |
| London - Theater Studies | $14,840 | $4,300 | $230 | $19,370 |
| London Direct Enrollment - City, University of London | $16,270 | $4,490 | $230 | $20,990 |
| London Direct Enrollment - Queen Mary, University of London | $14,210 | $6,520 | $230 | $20,960 |
| London Direct Enrollment - University College London | $17,110 | $7,460 | $230 | $24,800 |
| London - Full-Time Semester Internship | $5,570 | $4,300 | $230 | $10,100 |
| Madrid - Engineering, Architecture & Science | $15,050 | $3,820 | $230 | $19,100 |
| Madrid - Language & Area Studies | $14,350 | $3,880 | $230 | $18,460 |
| Milan - Business Studies | $14,900 | $3,800 | $230 | $18,930 |
| Milan - Fashion Design & Merchandising | $14,900 | $3,800 | $230 | $18,930 |
| Milan - Italy Today | $14,900 | $3,800 | $230 | $18,930 |
| Milan - Music: Voice, Composition & Instrumental | $14,900 | $3,800 | $230 | $18,930 |

| | | | |
|---|---|---|---|
| Milan - Full-Time Semester Internship | $4,960 | $3,800 | $230 | $8,990 |
| Multi-location - Emerging Economies: Buenos Aires & Santiago | $12,970 | $4,450 | $230 | $17,650 |
| Nagoya Direct Enrollment - Nanzan University* | $16,245 | $4,315 | $240 | $20,800 |
| Nantes - French Language Immersion & Area Studies | $14,560 | $4,180 | $230 | $18,970 |
| Nice - Business, Sustainability & Immigration | $12,860 | $4,095 | $230 | $17,185 |
| Nice Direct Enrollment – SKEMA Business School | $13,210 | $4,095 | $230 | $17,535 |
| Oxford Direct Enrollment - St. Catherine's College | $24,100 | $7,170 | $230 | $31,500 |
| Paris BIA - Business & International Affairs | $15,520 | $3,650 | $230 | $19,400 |
| Paris - French Studies | $15,140 | $3,600 | $230 | $18,970 |

## IES Abroad Program Fees

**Prices are in effect for Spring 2020**



| Program | Tuition | Housing/ Meals | Health Insurance | Total IES Abroad Program Fee |
|---|---|---|---|---|
| Paris - Studio Art, Dance & Music | $15,140 | $3,600 | $230 | $18,970 |
| Quito - Area Studies & Language | $14,220 | $3,500 | $230 | $17,950 |
| Quito Direct Enrollment - Universidad San Francisco de Quito | $14,220 | $3,500 | $230 | $17,950 |
| Rabat - Study in Rabat | $14,190 | $4,200 | $230 | $18,620 |
| Rome - Art History & Fashion | $13,970 | $3,690 | $230 | $17,890 |
| Rome - Early Childhood Education | $13,970 | $3,690 | $230 | $17,890 |
| Rome - Film & Media Studies | $13,970 | $3,690 | $230 | $17,890 |
| Rome - History & Classics | $13,970 | $3,690 | $230 | $17,890 |
| Rome - International Relations | $13,970 | $3,690 | $230 | $17,890 |
| Rome - Language & Area Studies | $13,970 | $3,690 | $230 | $17,890 |
| Rome - Sociology & Religion | $13,970 | $3,690 | $230 | $17,890 |
| Rome - Full-Time Semester Internship | $3,670 | $3,690 | $230 | $7,590 |
| Salamanca - Advanced Spanish Immersion | $10,075 | $2,645 | $230 | $12,950 |
| Salamanca - Psychology | $10,075 | $2,645 | $230 | $12,950 |
| Santiago - Health Studies | $13,305 | $3,120 | $230 | $16,655 |
| Santiago - Politics, Social Justice & Language | $12,700 | $2,970 | $230 | $15,900 |
| Shanghai - Economy, Business & Society | $12,800 | $3,565 | $230 | $16,595 |
| Shanghai Direct Enrollment - Engineering: Shanghai Jiao Tong University | $13,080 | $3,285 | $230 | $16,595 |
| Siena - Study in Tuscany | $13,930 | $3,830 | $230 | $17,990 |
| Siena - Business & Economics of Italian Food & Wine | $9,915 | $3,320 | $165 | $13,400 |

| | | | |
|---|---|---|---|
| Sydney Direct Enrollment - Macquarie University | $12,795 | $5,930 | $475 | $19,200 |
| Sydney Direct Enrollment - University of New South Wales | $14,195 | $4,995 | $475 | $19,665 |
| Sydney Direct Enrollment - University of Sydney | $16,240 | $6,435 | $475 | $23,150 |
| Tokyo - Language & Culture | $16,310 | $5,350 | $240 | $21,900 |
| Vienna - Business, Economics & International Relations | $16,630 | $3,900 | $230 | $20,760 |
| Vienna - European Society & Culture | $16,630 | $3,900 | $230 | $20,760 |
| Vienna - Music | $17,930 | $3,900 | $230 | $22,060 |
| Vienna - Psychology & Social Sciences | $16,630 | $3,900 | $230 | $20,760 |

*Additional Nagoya health insurance is billed to the student onsite by Nanzan University.

All amounts in this booklet are expressed in U.S. dollars. Estimated expenses are based on August 2019 exchange rates. These expenses may vary due to individual needs, spending habits, and exchange rates, and are not included in the IES Abroad program fee. Some items such as textbooks may be billed separately by IES Abroad.

**Discounts and Scholarships/Aid**
- Academic Year program tuition prices reflect at least a 20% discount off second consecutive semester program tuition for the same program.
- Students will receive a 20% discount applied as a credit to the second consecutive semester's tuition in a different program comprising an academic year.
- Students must enroll by November 1st to get the discount for academic year study, after which the second term's tuition pricing will be based on the following Spring term's tuition.
- Students will receive a 20% discount applied as a credit to the second consecutive semester's tuition in the same or different programs of a Calendar Year.
- Students must enroll by May 1st to get the discount for calendar year study, after which the second term's tuition pricing will be based on the following Fall term's tuition.
- Students will receive a $500 credit toward Summer tuition if a summer program is attended before or after a semester or academic year program.
- Students will receive a $300 credit toward a January Term tuition if a January Term program is attended before or after a semester program.
- The IES Abroad program fee does not reflect scholarships, financial aid, or grants such as the IES Abroad Public University Grant.

18. None of the programs mention conducting an abroad program from the United States via online courses.

19. Defendant's Spring 2020 marketing campaign also included implied promises and representation of what was included in an in person Spring 2020 study abroad program:

Home | Study Abroad | What's Included

A big part of studying abroad is immersing yourself in new experiences. We're all about providing outstanding academic and student support services to allow you to do just that.

We take care of the details so you can soak up every moment of your global experience. At-a-glance, we offer:

    

| **Personal Advising** | **Diverse Course Offerings** | **Immersive Field Trips** | **Housing** | **Health & Safety Services** |
|---|---|---|---|---|
| Your IES Abroad advisor is here to help you prepare for study abroad. | All of your classes are included in your program fee. | From course-related trips to weekend excursions, many field trips are built into the program. | Housing options vary by location, but typically include apartment, homestay, and residence hall options. | Your health and safety abroad is our highest priority. |

While You're Abroad

Part of making you feel at home in your host city is doing our best to help you feel safe and cared for. Whether it is an orientation program that makes you feel prepared or your housing that is well-located and comfortable—we're all about our student services.

While you're abroad you have access to:

- A local IES Abroad Center with:
    - Experienced, trained, and dedicated local staff on-site
    - Amenities generally including a small library, lounge areas and Internet access*
    - On-site diversity-related support and resources
    - Welcome and farewell dinners*
- Academic opportunities including:
    - More than 1,000 IES Abroad courses taught by qualified international faculty
    - On-site academic advising and assistance with course enrollment
    - Option to enroll in local partner university courses alongside local students*
    - Access to Moodle, an interactive online learning environment that engages you outside the classroom
    - Internships and field placements*
    - Service learning and volunteer opportunities*
    - Academic tutors*

- o Access to conversation clubs/language partners*
- Comprehensive <u>health and safety</u> services and crisis management support
- Medical insurance, including 24-hour traveler's assistance help line and emergency evacuation
- Housing reflective of student accommodations in your host city
- Meals, depending on your housing choice and program
- Field trips, cultural events, and course-related trips
- CORE™, our Comprehensive Orientation and Re-entry Experience programming
- Local university student card (can offer discounts on local services/goods)*

* Varies by program[3]

20.     Defendant's marketing also includes implied promises and representations that the

mandatory health insurance is good for the duration of the trip:

How We Support Your Health & Safety Abroad

**International Health Insurance**
Your program fee includes international health insurance for the duration of your program. The policy is specially designed for students traveling internationally, and it includes coverage for physical and some mental health issues, counseling, medical and other forms of evacuation, a bedside benefit for students hospitalized for more than a few days (which pays to fly family members to their bedside), and more.

Learn more about your <u>comprehensive coverage through CISI</u> and what you will be covered for while interning or studying abroad.[4]

21.     Finally, Defendant represents to students that they will be more marketable for

jobs and earn more money by participating in the experiences of its in person Spring 2020

program:

Can studying abroad jump-start your career? Our findings say yes!

By living and learning abroad, IES Abroad students develop highly sought-after professional skills—adaptability, communication, self-awareness, confidence—that not only make them more hirable, but also launch their career. Our survey findings show key career benefits of study abroad, including:

**Increased Hireability**
Most IES Abroad alumni feel that studying abroad helped them develop valuable job skills, such as language proficiency, cultural understanding, tolerance for ambiguity, adaptability, and self-confidence.

---

[3] https://web.archive.org/web/20201022185051/https://www.iesabroad.org/study-abroad/whats-included
[4] https://web.archive.org/web/20200408210235/https://www.iesabroad.org/about/health-safety

**Jobs Secured More Quickly After Graduation**
Nearly three quarters of IES Abroad alumni secured their first job within two months of graduation.

**Higher Starting Salaries**
IES Abroad alumni earn an average of $6,000 more in starting salaries (compared to recent U.S. college graduates from the National Career Outcomes Report).

**Higher Acceptance Into Grad School**
90% of IES Abroad alumni continuing on to graduate school earned admission into their 1st or 2nd choice graduate or professional school.[5]

22. Thus, Defendant's marketing materials represented that there would be in person courses conducted abroad, mandatory/ elective field trips, student events, and mandatory health insurance for the entire duration of the Spring 2020 programs.

**B.      Defendant's Spring 2020 Program's Brochures and Publications**

23. Each of Defendant's Spring 2020 programs possessed a standard form brochure and publications. Although the name of the location was different for each program, Defendant's representations of what services were to be provided at the locations were the same for each any every publication and brochure.

24. The implied promises and representations in the brochures and publications included a full program worth of in person courses abroad, housing (even if the location of housing was changed during the program), mandatory field trips, elective field trips, and use of mandatory health insurance.

25. For example, for Plaintiff's Vienna program, Defendant represented in its booklet publication the following prices and services covered for the Spring 2020 Vienna program.

---

[5] https://web.archive.org/web/20200408180732/https://www.iesabroad.org/study-abroad/benefits

## Vienna - European Society & Culture

**Prices are in effect for Spring 2020**



**Semester Program Fee** (invoiced by IES Abroad)

| | | |
|---|---|---|
| Tuition | | $16,630 |
| Housing/meals (students choose one) | | $3,900 |
|     Apartment, no meals provided | | |
|     Housing with Viennese residents, no meals provided | | |
|     Private residence hall, no meals provided (carries additional fee; see Additional Fees for Special Options) | | |
| Health insurance | | $230 |
| **Total IES Abroad Program Fee** | **A=** | **$20,760** |

**Additional Fees for Special Options Associated with Tuition and Housing** (invoiced by IES Abroad)

| | | |
|---|---|---|
| Housing/meals | | |
|     Private residence hall (no meals provided) option fee | | $475 |
| School of Record transcript (if required) | | $375 |
| **Total Additional Fees** | **B=** | |

Please add up additional fees that apply and place the sum in the box

**Additional Estimated Expenses for Student Budgeting Purposes (select those that apply)***
**The following expenses are estimated and will vary due to individual needs, spending habits, and fluctuating exchange rates.**

| | | |
|---|---|---|
| Required consular and visa fees (paid to consulate) | | $167 |
| Required residence permit fee (paid on-site) | | $140 |
| Round-trip airfare (varies with point of departure and carrier) | | $700-1,085 |
| Textbooks, copyright permission fees, course packets, and other course-related materials | | $200-250 |
| Average cost of meals not included in IES Abroad housing/meals fee by housing type (**while classes are in session**) | | |
|     Apartment | | $2,700 |
|     Housing with Viennese residents | | $2,700 |
|     Residence hall | | $2,700 |
| Rental or purchase of required cell phone - does **not** include usage fees | | $30-150 |
| Local transportation | | $250 |
| Optional IES Abroad field trips (not included in program fee) | | $75-525 |
| Personal expenses (does not include personal student travel) | | $2,100 |
| **Total Other Estimated Expenses** | **C=** | |

Please add up additional fees that apply and place the sum in the box

26.     Each of Defendant's Spring 2020 programs booklet publications contains the same itemized services offered in the estimated expenses above. These were implied promises that the Spring 2020 semester would be in person and abroad.

27.     Furthermore, each program location included a standard form syllabus that included the exact dates of start/end dates for the Spring 2020 program. Upon information and belief, the syllabus for all programs (regardless of location) utilized the same start and end dates and had the mandatory field trip scheduled for the week of March 15-21, 2020 (Defendant cancelled March 11, 2020).

28.     Upon information and belief, every syllabus contained the implied promise that the entire Spring 2020 semester would be conducted (a) in person (not online) and (b) abroad (not having student be at their home in United States).

## C.     Defendant's Standard Form Agreement for All Spring 2020 Programs

29.     The contract between Plaintiff and Defendant comprises of the implied promises made in Defendant's brochures, publications, circulars, and bulletins, in addition to the standard form "Form of Agreement and Waiver" Defendant enters into with students.

30.     Defendant utilized the same standard form contract for each of its Spring 2020 program locations like Plaintiff's contract attached as **Exhibit A.** The only thing that varies in the standard form contracts is the section where a student fills out their name, address, and program location.

31.     Plaintiff and Defendant entered into a standard form agreement for Defendant's Spring 2020 Vienna- European Society & Culture program (the "Agreement").

32.     The Agreement between Plaintiff and Defendant included promises Defendant made to Plaintiff in exchange for the payment of monies for the Spring 2020 program, including:

> 1. I have received and read IES Abroad published descriptions for the program I will attend and have duly informed myself about the IES Abroad center(s) I will attend and the Program IES Abroad conducts there. I have reviewed the IES Abroad Student Code of Responsibility, found in the student handbook. I have chosen to engage in this Program voluntarily and of my own free will. I have been advised that I may withdraw at any time during my participation in the Program.

33.     Thus, Paragraph 1 of Defendant's standard form Agreement asked Plaintiff and Class members to read the published descriptions of the programs, including all of the specific representations made in Paragraphs 13 through 28 above, which became part of the Agreement, including promises that the Spring 2020 program included: (1) mandatory field trips; (2) elective field trips; (3) student events; (4) housing for entire program (even if location of housing changed

during program); (5) access to mandatory health insurance benefits for the entire program duration; and (6) the program was to be conducted in person and abroad for the entire duration of the program.

34.     Furthermore, Paragraph 3 of the Agreement declares:

> 3. I understand that, although IES Abroad will attempt to maintain the Program as described in its publications and brochures, it reserves the right to change the Program, including the itinerary, travel arrangements, or accommodations, at any time and for any reason, with or without notice, and that neither IES Abroad, nor its officers, directors, contractors, affiliates, agents and employees shall be responsible or liable for any expenses or losses that I may sustain because of these changes.

35.     In regards to Paragraph 3 of the Agreement, Defendant's standard form Spring 2020 program brochures and publications, as alleged in paragraphs 21-25 above, include promises for (1) mandatory field trips; (2) elective field trips; (3) student events; (4) housing for entire program (even if location of housing changed during program); (5) access to mandatory health insurance benefits for the entire program duration; and (6) the program was to be conducted in person and abroad for the entire duration of the program. This includes Defendant's representation that the Spring 2020 programs would be 17 weeks long (inclusive of a 1 week mandatory field trip).

36.     Furthermore, under Paragraph 3 of the Agreement, a change to the Program, including the in person abroad class, itinerary, travel arrangements, or accommodations, does not mean a cancellation of the last 8 ½ weeks of the Spring 2020 semester. A change means something promised still occurs, just at a different time. A cancellation means it does not happen at all. Defendant did not change its in person courses that were to be provided in a foreign country, instead it cancelled the in-person classes that were to occur abroad, and did not provide in person study abroad class at all for the final 8 ½ weeks of the semester. Additionally, Defendant also cancelled the Services for the final 8 ½ weeks of the Spring 2020 semester.

37. Paragraph 9 of Defendant's standard form Agreement concerns housing and does not authorize Defendant to cancel Plaintiff's housing unless Plaintiff violated IES Abroad policies:

> 9. I understand that I have the option to choose housing located by IES Abroad as a service to its students or, if allowed by the IES Abroad program of study I have chosen, housing that I locate myself. Should I choose housing located by IES Abroad, I acknowledge that IES Abroad does not act as an agent for my housing nor does IES Abroad make any representation or warranty of any kind, express or implied, concerning said housing and I assume all responsibility for my housing choices. I understand that IES Abroad reserves the right to relocate me at any time and for any reason, with or without notice, to or within housing located by IES Abroad. I understand that I may be required by IES Abroad, in its sole discretion, to forfeit housing located by or provided by IES Abroad if I violate IES Abroad policies. I acknowledge and accept the potential risks in any housing situation including without limitation all risks from fire, theft, robbery, assault, and food poisoning. I understand that IES Abroad does not insure any of my property in housing located by IES Abroad or in any facilities or vehicles owned or leased by IES Abroad.

38. Additionally, under Paragraph 9 of the Agreement, Defendant's reservation of the right to relocate Plaintiff at any time for any reason, with or without notice does not mean cancellation of housing, instead it means a relocation to a different housing venue. Defendant provided no housing services at all for the final 8 ½ weeks of the Spring 2020 semester, despite Plaintiff paying for the entire semester worth of housing.

39. Upon information and belief, Defendant marks up its housing costs above what it is charged by third party vendors, and at a minimum did not even refund the portion of housing that Defendant marks up. Defendant does not disclose that it marks up the actual cost of housing that it is charged by third-party vendors to students, and it serves as a profit center for Defendant.

40. Paragraph 15 provides the only circumstances in which Plaintiff and class members could have the entire program's worth of student housing, field trips or other events, activities, trips or privileges terminated, all of which include behavior related issues:

> 15. I agree to comply with the IES Abroad Code of Student Responsibility and Student Handbook rules and regulations and any rules and regulations stipulated by

center staff or faculty, all policies for my specific center, and to obey host country laws. I understand that IES Abroad may take disciplinary action against me according to its Code of Student Responsibility and may summarily exclude me upon written notice from the IES Abroad Center, facilities, class(es), the Program, student housing, field trips or other events, activities, trips or privileges

if, in the view of IES Abroad or the Government of the host country, I have acted in any way that is detrimental to the Program or to other students for academic, moral, legal, or disciplinary reasons, or if my behavior offends against local laws or customs, or if my behavior is deemed by IES Abroad, in its sole discretion, to be detrimental to my own safety or well-being. I hereby grant IES Abroad permission to contact and inform my parents and/or my home college at any time about any misconduct, injury or incident involving me during or in connection with the Program or any aspect thereof, in IES Abroad's sole discretion.

41.     Plaintiff did not have any behavior related issues that lead to in person courses and the Services being terminated.

42.     Importantly, Paragraph 18 lists services that are covered from Plaintiff and class members payment of Defendant's invoice (Program Fee), including an implied promise to provide in person courses abroad and the Services:

### 18. (a) [ **For students required to pay IES Abroad Fees to contracted or home institution**]

I agree to pay any fee on invoice to IES Abroad for any housing, meal, travel and other arrangements and services that are provided in the Program and not covered by my home institution. If default be made in the timely payment of the principal sum, an interest rate of the lesser of the maximum permitted by law or 1 1/2 % per month will be charged on the unpaid balance.

### (b) [ **For students required to pay IES Abroad Fees directly to IES Abroad**]

I agree to pay a Program fee on invoice to IES Abroad for such academic, travel, meal, and other arrangements and services as are provided in the Program. The Program fee is due in full according to the terms of the invoice unless arrangements for a payment plan have been made. If default be made in the timely payment of the principal sum, an interest rate of the lesser of the maximum permitted by law or 1 1/2 % per month will be charged on the unpaid balance.

(i) I understand that the Program fee paid to IES Abroad includes:

(1) Tuition at IES Abroad Center up to a total of 19 semester hours per semester or 1-9 semester hours per summer term (depending on my program) or equivalent for orientation, language training or other instructions provided by IES Abroad;

(2) Meals as specified in IES Abroad publications;

(3) Housing in hotels, pensions or student housing while traveling on non-optional field study trips and in student housing as specified in IES Abroad Publications;

(4) Non-optional field study trips as provided for in the Program, if any;

(5) Transportation on non-optional field study trips;

(6) Gratuities (e.g. for hotels) while on non-optional field study trips;

(7) Emergency medical evacuation and repatriation of remains health insurance.

(ii) I acknowledge that the Program fee paid to IES Abroad does not include any items not listed in 18(b)(i) and specifically does not include:

(1) Transportation in the United States and between the Program site and the United States;

(2) Transportation in cities visited on field trips, except as stated above in paragraph 18(b)(i)(5);

(3) Cost of transporting luggage;

(4) Meals except as stated above in paragraph 18 (b)(i)(2)

(5) Entrance fees to exhibitions and museums; books; supplies; transcripts, except for the first, and test certificates; tuition charges for more than the equivalent of 19 semester hours per semester or 1-9 semester hours per summer term (depending on my program);

(6) Costs incurred if I do not have the proper passport and visas at all times;

(7) Gratuities for extra services (e.g., baths, beverages, porters);

(8) Medical expenses that are not covered by my medical insurance for which I will be entirely responsible; or

(9) Costs for evacuation in the event of civil disorder or natural disaster;

(10) Cost of transport from airport to residence and cost of transport to and from classes;

(11) Customs costs for items I bring or have shipped.

43.     Paragraph 21 of the Agreement states that unused services will not be refunded:

21. I further understand that IES Abroad shall make no refund in any event for any unused services such as tuition, field trips and housing, etc. while I am enrolled in the Program.

44.     However, under Paragraph 21, unused services are not the same thing as cancelled services because unused services mean the consumer actively chose not to use as service at the time it was scheduled to occur, while a cancellation means that a consumer did not have an opportunity to use the service at all at the scheduled time because it no longer exists.

45.     Here, Defendant cancelled the Spring 2020 in person courses that were to be provided in a foreign country for the final 8 ½ weeks of the Spring 2020 program. Defendant also cancelled the Spring 2020 Services that were to be provided for the final 8 ½ weeks. Plaintiff and Class Members did not actively choose not to use the Services, instead, those Services were taken away from them.

**D.     Plaintiff's Spring 2020 Program**

46.     At the time of the events complained of in this action, Plaintiff Kristen Galban was a student at University of Virginia majoring in statistics and physics.  She graduated in May, 2021.

47.     Plaintiff entered into an implied contract with Defendant for the Spring Semester, 2020, to attend its program in Vienna, Austria.

48.     For the Spring 2020 programs, Defendant utilized a standard for invoice for all students who paid Defendant directly for the Spring 2020 Program.

49.     Plaintiff's invoice is attached as Exhibit B.

50.     Other students paid their university via a pass-through charge and the university paid Defendant.

51.     Plaintiff Galban paid $18,260 to Defendant in exchange for the promises and terms provided in Defendant's marketing materials, brochures, published materials, and in the Contract.

52.     Specifically, Plaintiff paid: (1) $3,900.00 for Housing; (2) $230 for Mandatory Health Insurance; (3) $16,630.00 for Tuition (which includes mandatory field trips and student events); (4) $82.65 for a Public Transportation Ticket; (5) $29.17 for a German Text Book; and (6) $3.24 for an elective Catacombs Tour field trip.

53.     Plaintiff Galban's Vienna program began on January 13, 2020 and was to last for 17 weeks, ending on May 9, 2020.

54.     The standard form marketing, brochures, and publications declared that the Spring 2020 program was 17 weeks, with a built in 1 week mandatory field trip (March 15-20, 2020).

55.     On March 11, 2020, Defendant suspended the program, effective immediately, and Plaintiff was told to return to the United States.

56.     Upon information and belief, Defendant cancelled not only Plaintiff's program on March 11, 2020, but all of Defendant's programs in all countries in operates in.

57.     Defendant changed Plaintiff's classes to an online format for the remaining 8 ½ weeks of the Spring 2020 program (March 11, 2020 through May 9, 2020).

58.     However, unlike the change to online classes, Defendant did not change other expenses that Plaintiff had paid for, instead, Defendant cancelled the following services Plaintiff paid for that did not occur at all for the final 8 ½ week (March 11, 2020 through May 9, 2020):

59.     To date, despite requests, Plaintiff Galban still has received no refund for the cancelled study abroad in person courses and Services for the last 8 ½ weeks of the Spring 2020 program, including (housing, mandatory field trips, elective field trips, health insurance, student events, and subway passes).

60.     Had Plaintiff known that Defendant would cancel the program and keep her monies for the tuition paid and Services cancelled, she would not have signed up for the Spring 2020 program.

**E.      Defendant has Failed to Return Monies for Cancelled Services**

61.     Upon information and belief, Defendant has not recovered all costs that it could have from itself and third party vendors for the Spring 2020 program Services that Plaintiff paid for, which must be returned to Plaintiff.

62.     There have been multiple complaints filed by Spring 2020 program students against Defendant to attorney generals of various states because Defendant failed to return the entire pro-rata portion of the 8 ½ weeks of the Services it cancelled. In many cases, Defendant did not return any money at all for cancelled services, and instead pocketed the money as a profit center.

63.     Upon information and belief, many of the housing vendors Defendant's used have stated that Defendant was not responsible for covering the costs of vacant beds/apartments after it cancelled its Spring 2020 program on March 11, 2020 with 8 ½ weeks remaining. For example, Zoom Entertainment GmbH administrator, a vendor of Defendant's Spring 2020 program, had their administrator, Tom Wessley state that Defendant was not liable for the cost of vacant beds/apartments for the 8 ½ weeks remaining in the Spring 2020 program after cancellation.

64.     Defendant has represented in multiple state attorney general responses, including Illinois, that none of its Vienna housing expenses were recoverable.

65.     Defendant's CFO wrote a letter dated May 18, 2020, that made a written pledge to issue "recoverable-cost refunds" on housing, but Defendant has concealed existence of qualifying recoveries from housing vendors around the world.

66.     Upon information and belief, Defendant has represented to its Spring 2020 students that the housing vendors did not issue any refunds, invoice reductions, or credits on cancelled housing, when indeed Defendant did receive those benefits.

67.     Defendant's failure to refund the Services unjustly enriches itself at the detriment of Plaintiff and class members because they spent monies for the Services that were cancelled and never provided and Defendant kept those monies as a profit, including any refunds Defendant received that were not turned over to Plaintiff and Class members.

68.     Defendant's failure to return monies paid for cancelled Services violates Defendant's own Statement of Ethical Principles and "Students First" policy, strictly to conserve Defendant's financial position and enhance its market position during the pandemic at the expense of Plaintiff and Class members.

69.     Plaintiff and Class Members suffered actual damages from Defendant failing to return monies paid for the cancelled Spring 2020 program Services because they paid monies for the Services that never occurred and were never changed to something else.

**F.     Insurance Refunds**

70.     After a year of complaints to the Delaware Department of Insurance and CISI (Defendant's health insurance provider for all its Spring 2020 programs), Defendant issued defective refunds to some, but not all students, and the refunds that they did issue were not reflective of the pro-rata remainder of the Spring 2020 semester that remained after March 11, 2020.

71.     Upon information and belief, Defendant switched the date of cancellation of Plaintiff and all other Spring 2020 program students from March 12, 2020 to March 21, 2020,

which means students missed out on over a week worth of a pro-rate share of health insurance refunds.

72.     Additionally, Defendant did not provide notice to all students at their most up to date address that it was refunding a portion of the mandatory health insurance fee from CISI. Instead, Defendant sent a single notification to an email address of students (many of which were old) of the opportunity for them to file a claim to receive a refund.

73.     Upon information and belief, many of the students did not receive notice of the opportunity to file a claim because a single email was all that was sent and the email was sent nearly a year after the Spring 2020 program ended

74.     Plaintiff did not receive a refund for the entire pro rata portion of the 8 ½ weeks of her health insurance policy that was cancelled.

75.     Defendant was unjustly enriched at the expense of Plaintiff and Class members by failing to return the entire 8 ½ pro rata portion of the mandatory health insurance fee who had paid for that service in full.

76.     Plaintiff and class members suffered actual damages from Defendant failing to provide a full 8 ½ pro rata refund of the Spring 2020 program health insurance fee.

**G.     Defendant's Representations of its Financial Position for the 2020 Fiscal Year**

77.     Upon information and belief, Defendant has represented to various state attorney generals in its responses that Defendant's revenue for Spring 2020 program and the rest of 2020 was "nearly zero, when in reality Defendant:

     a.     Pivoted to providing virtual, customized and faculty-led programs the same year;

     b.     Took in a large volume of revolving grants and donations to which it has become accustomed (topping the $1 million it received in 2019);

    c.   Collected income from its more than $53 million in stock and bond holdings reported to the IRS for 2019;

    d.   Doled out $1,000 scholarships to new students within weeks of the March program suspensions and pledged as much as $6 million in total scholarships for 2021; and

    e.   withheld from students hundreds of thousands of dollars in vendor refunds/credits/cancelled expenses for undelivered services;

78.    Additionally, in April 2020, Defendant issued a WARN Act notice, which they were required to do before laying off most of Defendant's employees. However, subsequently, Defendant took out more than $5 million dollars from the US Government in just PPP money that was forgiven that was supposed to go towards keeping employees:

    1)   $3,136,220 loan on April 11, 2020;

    2)   $2,000,000 on February 3, 2021.

79.    Upon information and belief, Defendant also leaned on universities/college's limited CARES Act funds whenever and wherever it could to supplant its own refund obligations (so, in a sense, student and parent taxpayers who never received a return of monies for cancelled services were burned twice).

80.    Defendant was unjustly enriched by taking monies from PPP loans, laying off employees, and receiving monies returned from vendors, and CARES Act monies from university, all while failing to return Plaintiff and Class members monies for the Services that were cancelled in the Spring 2020 program for 8 ½ weeks.

81.    Plaintiff satisfied all conditions precedent prior to bringing this lawsuit, including Paragraph 32 of the Agreement, which requires a mediation prior to filing a lawsuit. Plaintiff went to mediation on a class wide basis prior to filing her class action complaint.

## V.    CLASS ACTION ALLEGATIONS

82.    Plaintiff brings this action as a class action pursuant to Rule 23 (b)(2) and (b)(3), of the Federal Rules of Civil Procedure on behalf of herself and all others similarly situated as members of the Class listed below:

> All students and former students of Defendant who paid, or on whose behalf payment was made for Housing for the Spring 2020 Program who have not received a full pro-rata refund of Housing for the cancelled weeks of the Spring 2020 program (the "Housing Class")

> All students and former students of Defendant who paid, or on whose behalf payment was made for Tuition for the Spring 2020 Program who have not received a full pro-rata refund of Tuition for the cancelled weeks of the Spring 2020 program (the "Tuition Class").

> All students and former students of Defendant who paid, or on whose behalf payment was made for Mandatory Health Insurance for the Spring 2020 Program who have not received a full pro-rata refund of the Mandatory Health Insurance for the cancelled weeks of the Spring 2020 program (the "Mandatory Health Insurance Class")

> Collectively "the Classes"

83.    Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Classes may be expanded or narrowed by amendment or superseded by Plaintiff's motion for class certification.

84.    **Numerosity of the Classes**.  The members of the Classes are so numerous that their individual joinder is impracticable.  Plaintiff is informed and believes that there are, accordingly, at least several thousand members in the Class.  Inasmuch as the Class members may be identified through business records regularly maintained by Defendant and its employees and agents, the number and identities of members of the Classes can be ascertained.  Members of the Classes can be notified of the pending action by e-mail and mail and supplemented by published notice, if necessary.

85.     **Commonality and Predominance of Common Questions of Law and Fact**.

There are questions of law and fact common to the Classes. These questions predominate over any

questions affecting only individual Class members. These common legal and factual issues

include, but are not limited to whether:

    a.  Whether Defendant contracted for in person abroad courses and for the Services and did not provide those in person abroad courses and Services at all for 8 ½ weeks or for the full duration of the Spring 2020 program;

    b.  whether Defendant was unjustly enriched by retaining payments for tuition and the Services by Plaintiff without providing in person abroad courses and Services at all for the final 8 ½ weeks or providing a full pro-rata refund for tuition and the Services that were not provided;

    c.  whether Defendant was unjustly enriched by taking monies from PPP loans, CARES Act monies, and stocks and bonds, while failing to return Plaintiff's payments for tuition and Services that were not provided at all for 8 ½ weeks or providing a full pro-rata refund for the Services that were not provided, but some portion of a refund was issued.

    d.  whether certification of the Classes is appropriate under Rule 23;

    e.  whether the Classes are entitled to declaratory, equitable, or injunctive relief; and

    f.  whether Plaintiff and the Classes are entitled to damages and what are the proper measure of damages

86.     **Typicality.**     The claims of the representative Plaintiff are typical of the claims of

each member of the Classes. Plaintiff, like other members of the Classes, has sustained damages

arising from Defendant's breach of contract, or alternatively from unjust enrichment, as alleged

herein. The representative Plaintiff and the Classes were and are similarly or identically harmed

by the same conduct by Defendant.

87.     **Adequacy.**     The representative Plaintiff will fairly and adequately represent and

protect the interests of the Classes and has retained counsel who are experienced and competent

trial lawyers in complex litigation and class action litigation. There are no material conflicts

between the claims of the representative Plaintiff and the Classes that would make class certification inappropriate.

88. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant. It would, thus, be virtually impossible for the Classes, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if the Classes could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

89. In the alternative, the Classes may be certified because:

    a. The prosecution of sperate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct for Defendant;

    b. Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to members of the Classes as a whole.

## VI. CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT

90. Plaintiff and the Classes repeat and re-allege the allegations in paragraphs 1 through 89 above, as if fully alleged herein.

91.     Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

92.     Plaintiff and members of the Classes and Defendant entered into an implied contract for a full 17 weeks of in-person courses provided abroad (outside on the United States) and for the Services for the Spring 2020 program (January 13, 2020 to May 9, 2020), as promised in Plaintiff's and members of the Classes standard form Agreement, and Defendant's marketing, brochures, circulars, and publications of the Spring 2020 program, which collectively are the terms of the Contract between Plaintiff and Defendant. **Exhibit A** (Standard form Agreement).

93.     Defendant billed Plaintiff and members of the classes for 17 week (January 13, 2020 to May 9, 2020) of (1) Housing; (2) Mandatory Health Insurance; (3) Tuition (which includes mandatory field trips and student events and in person courses provided abroad); (4) Public Transportation Ticket; and (5) elective field trips.

94.     Specifically, Plaintiff and members of the Classes paid: (1) $3,900.00 for Housing; (2) $230 for Mandatory Health Insurance; (3) $16,630.00 for Tuition (which includes mandatory field trips and student events); (4) $82.65 for a Public Transportation Ticket; (5) $29.17 for a German Text Book; and (6) $3.24 for an elective Catacombs Tour field trip.

95.     On March 11, 2020, Defendant cancelled the remaining 8 ½ weeks of in-person courses provided abroad and the Services for the Spring 2020 program (March 11, 2020 to May 9, 2020).

96.     After March 11, 2020 Plaintiff and members of the Classes never received the benefit of in person courses provided abroad, the housing, student events, mandatory health insurance, public transportation ticket, mandatory/elective field trips for the remaining 8 ½ weeks

of the Spring 2020 program that Defendant had cancelled in person courses abroad and the Services for (March 11, 2020 to May 9, 2020).

97.     Plaintiff satisfied all conditions precedent in the Agreement, including a class wide mediation for the putative class members.

98.     Defendant breached its Contract with Plaintiff and members of the Classes by failing to (a) provide a full 17 weeks of in person courses abroad (outside of United States), housing, student events, mandatory health insurance, public transportation ticket, mandatory/elective field trips for the weeks that were cancelled (March 11, 2020 to May 9, 2020) and (b) provide a full pro-rata refund of tuition for in person abroad courses and refund for Services that were cancelled with 8 ½ weeks remaining (March 11, 2020 to May 9, 2020).

99.     Plaintiff and members of the Classes have therefore been denied the benefit of their bargain.

100.     Plaintiff and members of the Classes have performed all obligations imposed on them pursuant to their implied contract with Defendant, including by making full payment for the 17 week in person courses to be provided abroad and for the Services to Defendant for the Spring 2020 semester, or securing student loans and/or scholarships to make such payments.

101.     Defendant has failed to fully compensate Plaintiff and Class members for the damages they suffered as a result of Defendant's actions.

102.     Specifically, Defendant has failed to fully return or reimburse Plaintiff and members of the Classes their pro-rata portion of monies paid for tuition and the Services for the 8 ½ weeks that in person courses provided abroad and the Services were cancelled of the 17 weeks that were paid for during the Spring 2020 program.

103.     Plaintiff and members of the Classes seek all damages and equitable relief to which they may be entitled.

## COUNT II
## UNJUST ENRICHMENT

104.     Plaintiff and the Classes repeat and re-allege the allegations in paragraphs, 1, 3-14, 21, 25, 27-28, 46, 48-50, 52-84, 85(b)(c)(d)(e)(f), 86-89.

105.     Plaintiff brings this claim individually and on behalf of the other members of the Classes in the alternative to the breach of contract claim in Count I.

106.     Plaintiff and the members of the Classes conferred a benefit on Defendant in the form of payment for (1) $3,900.00 for Housing; (2) $230 for Mandatory Health Insurance; (3) $16,630.00 for Tuition (which includes mandatory field trips and student events); (4) $82.65 for a Public Transportation Ticket; (5) $29.17 for a German Text Book; and (6) $3.24 for an elective Catacombs Tour field trip for a full 17 weeks of those Services.

107.     Defendant was aware of and voluntarily accepted this benefit.

108.     Starting on March 11, 2020, as described above, Defendant failed to provide 17 weeks of in person courses provided abroad (outside of the United States), housing, mandatory health insurance, mandatory field trips, elective field trips, student events, and public transportation tickets. In fact, Defendant provided no in person courses abroad or any of those services at all from March 11, 2020 to May 9, 2020.

109.     Any refund Defendant has provided for the 8 ½ weeks of cancellation of those Services and/or tuition, was not the full pro-rata 8 ½ week portion of the amount Plaintiff and members of the Classes paid, leading to Defendant being unjustly enriched. Defendant also failed to provide adequate notice of any refunds provided, which lead to them keeping monies owed to students.

110.    Despite failing to provide the benefits owed from March 11, 2020 to May 9, 2020 at all, Defendant has retained and appreciated the benefit of the amounts Plaintiff and members of the Classes paid for in person courses provided abroad and Services, to the detriment of Plaintiff and members of the Classes.

111.    The circumstances are such that Defendant's retention of this benefit violates fundamental principles of justice, equity and good conscience.

112.    Defendant has been unjustly enriched by Plaintiff and members of the Classes payment for the cancelled in person courses to be provided abroad and the Services in the Spring 2020 program.

113.    Defendant has also been unjustly enriched by keeping Plaintiff and members of the Classes payments made for the cancelled Services because Defendant also took monies from PPP loans, CARES Act monies from universities, and sold stocks to account for any lost earnings during the Spring 2020 program from cancelled in person courses to be provided abroad and the Services.

114.    In light of the above, there was no justification for Defendant's failure to return Plaintiff and members of the Classes full pro-rata portions of tuition for in person courses provided abroad and the Services that were cancelled (March 11, 2020 to May 9, 2020) during the Spring 2020 program

115.    Accordingly, Plaintiff and Class members are entitled to and seek disgorgement and restitution of the benefits unjustly retained, whether in whole or in part, including through refunds for tuition and fees for the Spring 2020 semester.

## PRAYER FOR RELIEF

116.    Plaintiff individually and on behalf of the members of the Class, respectfully requests that the Court enter judgment in their favor and against Defendants as follows:

a.    Certifying the Classes under Rule 23 as requested herein, designating Plaintiff as class representative, and appointing the undersigned counsel as Class counsel;

b.    Declaring that Defendant is financially responsible for notifying the Classes of the pendency of this suit;

c.    Declaring that Defendant wrongfully kept the monies paid by the Classes;

d.    Awarding injunctive relief as permitted by law and equity;

e.    Awarding Plaintiff's reasonable attorney fees, costs, and expenses;

f.    Awarding pre- and post-judgment interest on any amounts awarded; and

117.    Awarding such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Respectfully submitted September 12, 2022.

VARNELL & WARWICK, P.A.

/s/ Matthew T. Peterson
Matthew T. Peterson, ARDC No. 6321290
Janet R. Varnell, *pro hac vice pending*
1101 E. Cumberland Ave., Ste. 201H, #105
Tampa, Florida 33602
T: 352-753-8600
F: 352-504-3301
*mpeterson@vandwlaw.com*
*jvarnell@vandwlaw.com*
*ckoerner@vandwlaw.com*

**Counsel for Plaintiff**